UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

James Tyner,                                      Civil No. 17-3147 (DWF/KMM)

           Plaintiff,

v.                                               **MEMORANDUM OPINION AND ORDER**

Qwest Corporation, d/b/a CenturyLink,

           Defendant.

---

Ryan H. Ahlberg, Esq., Ahlberg Law, PLLC, counsel for Plaintiff.

Eugene Hummel, Esq., Joel P. Schroeder, Esq., John A. Sullivan, Esq., Best & Flanagan LLP, counsel for Defendant.

---

## INTRODUCTION

This matter is before the Court on a Motion for Summary Judgment brought by Defendant Qwest Corporation, d/b/a CenturyLink ("CenturyLink"). (Doc. No. 23.) This case involves a single claim for failure to accommodate under the Minnesota Human Rights Act ("MHRA"). For the reasons set forth below, the Court grants the motion.

## BACKGROUND

Plaintiff James Tyner worked as a broadband technician for CenturyLink. (Doc. No. 26 ("Schroeder Decl.") ¶ 2, Ex. A ("Pl. Dep.") at 15, 20.) Plaintiff was responsible for setting up telephone, Internet, and television services for CenturyLink customers. (*Id.* at 21-22.) This required Plaintiff to work for long periods of time in front of customers,

travel to homes and businesses, occasionally work for hours at a time at a single location, and be courteous and respectful to customers and members of the public. (*Id*. at 21-24, 26, 30-31.) Plaintiff's territory was primarily located in South Minneapolis, Richfield, Bloomington, and Burnsville. (Doc. No. 28 ("Elwood Decl.") ¶ 4.) During all relevant times, Michael Elwood served as Plaintiff's supervisor. (Elwood Decl. ¶¶ 4, 5; Pl. Dep. at 47.) In addition, CenturyLink's local management team consisted of Elwood, Michael Winberg, and Timothy Buchholz. (Elwood Decl. ¶ 5.)

Plaintiff has diabetes, which sometimes causes him to have a sudden urge to urinate. Plaintiff testified that he carried a bottle in his CenturyLink van so that he could relieve himself. (Pl. Dep. at 89.) Plaintiff got the bottle from his doctor's office. (*Id*.) Despite carrying the bottle, Plaintiff testified that he had accidents on at least ten occasions while on the job. (*Id*. at 45.)

On the morning of January 11, 2017, Plaintiff was working at the City Limits Apartments in Southeast Minneapolis. (*Id*. at 67.) While driving the CenturyLink van into the parking lot, he experienced an urge to urinate. (*Id*.) Plaintiff maneuvered to park the van three separate times and ended up parking next to the apartment complex's manager, Brian Hamilton. Plaintiff then proceeded to urinate into a bottle. (*Id*. at 67-69; Schroeder Decl. ¶ 2, Ex. E ("Hamilton Dep.") at 18; *id*. ¶ 2, Ex. H at CTL 10, 12, 16.) Hamilton did not see Plaintiff's genitals, but he saw movements to suggest he was urinating in his van. (*Id*. at 18, 55.) When Plaintiff finished urinating, he noticed Hamilton waving, so Plaintiff rolled down his window. (Pl. Dep. at 69.) Hamilton, who was upset, introduced himself and asked Plaintiff for his supervisor's phone number. (*Id*.

2

at 69; Hamilton Dep. at 20.) Hamilton called Plaintiff's supervisor and left a message explaining the situation. (Schroeder Decl. ¶ 2, Ex. I.) Hamilton then refused to allow Plaintiff to enter the apartment complex to work, and Plaintiff called Elwood to explain the situation. (Pl. Dep. at 69-70.) That day, Plaintiff told Elwood that he was diabetic. (*Id*. at 72; Schroeder Decl. ¶ 2, Ex. K at CTL 1600; Elwood Decl. ¶ 6.) This was the first time Plaintiff notified Elwood of his condition. (Elwood Decl. ¶ 6.) Elwood expressed to Plaintiff that Plaintiff's behavior was "totally unacceptable." (Schroeder Decl. ¶ 2, Ex. K at CTL 1600-01.)

CenturyLink investigated the incident and, in doing so, collected a statement from Hamilton, Elwood's typed notes, and photographs of the parking lot. Elwood also conducted an "investigatory meeting," a process employed with CenturyLink's union workforce to investigate alleged misconduct. (Schroeder Decl. ¶ 2, Ex. G ("Elwood Dep.") at 12-13; Doc. No. 27 ("Moreno Decl.") ¶ 3.) At the meeting, Plaintiff testified that urinating in the bottle was his only option at the time and mentioned his diabetes as the reason for his behavior. (Schroeder Decl. ¶ 2, Ex. H at CTL 10, 12 ("[B]eing a diabetic at the time it was my only behavior available.")

On January 27, 2017, the CenturyLink management team conducted a "case call" to discuss Plaintiff's conduct. (Schroeder Decl. ¶ 2, Ex. M ("Buchholz Dep.") at 7-8.) The team determined that Plaintiff's conduct was unacceptable and in violation of CenturyLink's Code of Conduct and Employee Handbook and that termination was

justified. (*Id.* at 12-13.)[1] On February 1, 2017, Winberg and Elwood met with Plaintiff and his Union representative to terminate Plaintiff's employment. (Elwood Decl. ¶ 7; Schroeder Decl. ¶ 2, Ex. P.)

On June 19, 2017, Plaintiff brought this case in state court. (Doc. No. 1 ("Compl.").) CenturyLink removed the case on July 20, 2017 based on diversity jurisdiction. (Compl., Ex. 1.) Plaintiff originally asserted three causes of action: (1) failure to accommodate under the MHRA; (2) reprisal under the MHRA; and (3) discriminatory discharge under the MHRA. CenturyLink moved for summary judgment on all counts. (Doc. No. 25.) Plaintiff has since agreed to the dismissal of his reprisal and discrimination claims. (Doc. No. 30 at 1.) Therefore, the single remaining claim is for failure to accommodate under the MHRA.

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Weitz Co., LLC v. Lloyd's of London*, 574

---

[1] CenturyLink's Code of Conduct requires employees to conduct themselves in a responsible, respectful and honest manner, act professionally, and to behave in a manner above reproach. (Schroeder Decl. ¶ 2, Exs. B-D at CTL 1207, 1245-46, 1273.) And while the Code of Conduct does not specifically indicate that urinating in view of member of the public is prohibited, the Code "covers a broad range of subjects" and provides that "it cannot possibly address every question . . . or situation." (*Id.* at 1199.)

F.3d 885, 892 (8th Cir. 2009).  However, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).  A party opposing a properly supported motion for summary judgment "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II. Failure-to-Accommodate Claim

In Count I, Plaintiff alleges a claim for failure to accommodate under the MHRA.  The MHRA requires employers to "make reasonable accommodation to the known disability of a qualified disabled person."  Minn. Stat. § 363A.08, subd. 6(a).  To establish that an employer failed to accommodate a disability, a plaintiff must establish: (1) he is qualified disabled person; (2) the employer knew of his disability; and (3) the employer failed to make reasonable accommodation to the known disability.  *See Peebles v. Potter*, 354 F.3d 761, 766-67 (8th Cir. 2004) (explaining that the known disability triggers the duty to reasonably accommodate); *see also, e.g.*, *Jacobson v. Allina Health*

*Sys.*, Civ. No. A08-1356, 2009 WL 1444156, at *5 (Minn. Ct. App. May 26, 2009) (unpublished). An employee is qualified for a position if he can perform the essential functions of the position with or without a reasonable accommodation. *See Scruggs v. Pulaski Cty., Ark.*, 817 F.3d 1087, 1092 (8th Cir. 2016).[2]

Here, Plaintiff claims that CenturyLink failed to accommodate his disability by: (1) failing to allow him to use a Brief Relief bag[3] or adult undergarments while on duty; and (2) failing to engage in the interactive process. (Compl. ¶ 30; Doc. No. 30 at 4-5.)[4] CenturyLink argues that Plaintiff's claim fails on three separate grounds: (1) Plaintiff was not a qualified disabled person; (2) even if he was, Plaintiff did not request an accommodation; and (3) to the extent that Plaintiff requested an accommodation, it was a prospective request that is not protected under the MHRA.

First, the Court examines whether Plaintiff requested an accommodation. The parties agree that such a request is a required element of Plaintiff's claim. In his Complaint, Plaintiff alleges that he requested that he be able to use a Brief Relief bag or a similar urinal. (Compl. ¶ 30.) The record demonstrates that Plaintiff told his supervisor that he needs to urinate frequently and suddenly, and that he uses a urinal because of his

---

[2] In applying the MHRA, the Court looks to federal caselaw interpreting similar language in federal anti-discrimination statutes. *See, e.g.*, *Lang v. City of Maplewood*, 574 N.W.2d 451, 453 (Minn. App. 1998).

[3] A Brief Relief bag is a disposable urinal bag. (Compl. ¶ 11.)

[4] CenturyLink argues that the MHRA does not require employers to engage in the interactive process. Plaintiff has not addressed this portion of his failure-to-accommodate claim in his opposition. Therefore, the Court considers it abandoned.

sudden urges to urinate. He was not, however, requesting an accommodation. Instead, Plaintiff was explaining why he urinated in a bottle. *See, e.g.*, *Siefkin v. Vill. of Arlington Heights*, 65 F.3d 664, 666 (7th Cir. 1995) (explaining that asking for a second chance is not an accommodation); *Rasmussen v. Jerry's Enters., Inc.*, Civ. No. 07-1730, 2008 WL 11349805, at *9 (D. Minn. Sept. 2, 2008) (granting summary judgment on retaliation claim; noting that informing an employer of a disability is not, in and of itself, a request for an accommodation).

Second, even if Plaintiff could point to record evidence that he requested permission to use a Brief Relief bag as an accommodation to his disability, there is simply no evidence that the use of such a bag would have accommodated Plaintiff's condition and allowed Plaintiff to perform the essential functions of his job. The record demonstrates that as a broadband technician, Plaintiff was required to work in public for extended periods of time. The use of a Brief Relief bag would not have allowed Plaintiff to perform his job any more than Plaintiff's use of the bottle to urinate. The availability of a Brief Relief bag would not have prevented Plaintiff from relieving himself in public when he had a sudden urge to urinate—it would simply change the vessel into which Plaintiff would relieve himself. Indeed, these bags are generally used by technicians who do not work in public spaces. (*See, e.g.*, Schroeder Decl. ¶ 2, Ex. M ("Buchholz Dep.") at 15, 18 (testifying that the bags are used by employees who, for example, work in a utility hole).)

Plaintiff also argues that he could perform the job if he could wear adult undergarments. However, there is no record evidence that he ever made such a request.

7

Moreover, a request to wear adult undergarments is not a request for an accommodation because the use of such undergarments would be a matter within Plaintiff's personal control and would not have required approval by CenturyLink. *See Hill*, 181 F.3d at 894. Indeed, in his deposition, Plaintiff acknowledged that he could have worn adult undergarments on the day of the incident, but that he did not do so because he did not feel comfortable wearing them. (Pl. Dep. at 53-54, 189-90.) He also acknowledged that he did not need CenturyLink's permission to wear them. (*Id*. at 189.)

Third, even if Plaintiff's comments could be construed as a request for an accommodation, the request was untimely. The record demonstrates that Plaintiff did not inform his supervisor at CenturyLink of his diabetes and urges to urinate until *after* the January 11, 2017 incident. (Doc. No. 25 at 11; Doc. No. 30 at 6.) This timing is fatal to his claim. *See, e.g.*, *See Hill v. Kan. City Area Transp. Auth.*, 181 F.3d 891, 894 (8th Cir. 1999) (noting that a request for accommodation that occurred after a work violation was untimely). An employer is not required to excuse past workplace misconduct even if it is the result of an employee's disability. *See id*. at 894 (8th Cir. 1999) ("Hill did not request a disability accommodation, she asked for a second chance to better control her treatable medical condition.").

Finally, Plaintiff suggests that his conduct in urinating in view of a customer is not explicitly prohibited by CenturyLink's policies, and therefore, that a jury should decide if Plaintiff should have known that his conduct would result in termination. The Court disagrees. CenturyLink's decision to prohibit employees who operate in public

8

spaces from urinating in view of member of the public is job-related and consistent with business necessity.

For the above reasons, the Court concludes that no reasonable juror could find that Plaintiff requested an accommodation as required to support a failure-to-accommodate claim under the MHRA. Thus, CenturyLink's motion for summary judgment is properly granted.

## ORDER

Based on the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Summary Judgment (Doc. No. [23]) is **GRANTED**.

2. Plaintiff's Complaint (Doc. No. [1]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 26, 2018           s/Donovan W. Frank
                                  DONOVAN W. FRANK
                                  United States District Judge